

# NUMBER 13-10-00159-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WOMEN'S CLINIC OF SOUTH TEXAS,**               **Appellant,**

**v.**

**SENAIDA ALONZO,**                        **Appellee.**

---

### On appeal from the 93rd District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Women's Clinic of South Texas (the Clinic) challenges the trial court's denial of its motion to dismiss in this health care liability claim brought by appellee Senaida Alonzo. By three issues, the Clinic argues that: (1) the trial court abused its discretion in denying its motion to dismiss because Alonzo's expert report lacked the

requisite elements to satisfy section 74.351 of the civil practices and remedies code, *see* TEX. CIV. PRAC. & REM. CODE ANN. §74.351(a)-(b), (r)(6) (Vernon Supp. 2010); (2) a thirty-day extension to cure the report is unavailable to Alonzo despite the trial court's purported withdrawal of its earlier thirty-day extension; and (3) the trial court erred in failing to award attorneys' fees and costs to the Clinic. *See id.* § 74.351(c). We affirm, in part, and reverse and render, in part.

## I. BACKGROUND

On April 23, 2009, Alonzo filed suit against the Clinic, Fernando J. Otero, M.D., Orestes Molina, M.D., and Heriberto Rodriguez-Ayala, M.D. claiming negligence in connection with their alleged failure to diagnose and treat her ectopic pregnancy before emergency surgery required the removal of her left fallopian tube and ovary.[1] The Clinic answered on May 13, 2009. On August 17, 2009, Alonzo served the Clinic with her expert report, authored by Margaret Thompson, M.D., J.D..[2] On August 28, 2009, the Clinic filed its objections to the expert report and its first motion to dismiss, arguing that Alonzo's expert report failed to set out the required standard of care, breach, and causation elements, that Dr. Thompson's qualifications to author an expert report as to the Clinic were not established, and that the report did not contain Dr. Thompson's curriculum vitae (CV).

The trial court held a hearing on the Clinic's motion to dismiss on October 28, 2009. At the hearing, the parties acknowledged that Alonzo had since provided the

---

[1] Drs. Otero, Molina, and Rodriguez-Ayala are not parties to this appeal.

[2] The deadline for serving the expert report was August 21, 2009, or 120 days from the filing of Alonzo's original petition. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2010).

Clinic with a copy of Dr. Thompson's CV. The parties also briefly discussed the remaining inadequacies of the report, as alleged by the Clinic, but the trial court reserved ruling on the motion, instead asking the parties to provide briefing on the issue of the adequacy of Alonzo's expert report. The Clinic filed its letter brief on November 3, 2009.

On November 5, 2009, the trial court issued an order denying the Clinic's motion to dismiss and granting Alonzo a thirty-day extension "to cure the report's deficiency"; the order further stated that Alonzo was "granted thirty (30) days from the date of this order to produce a report that attempts to cure the deficiencies in [Alonzo]'s current expert report." On November 23, Alonzo filed a motion to correct entry of the trial court's November 5 order, in which Alonzo argued that

> [T]he [extension] Order reflects in global, vague terms, that [Alonzo] is to prepare a new expert report. However the rules clearly require that the Court must first point out specific deficiencies in the current report. Pursuant to CPRC § 74.351(c), the Court must first enter a finding that specific elements of the report are found to be deficient. The order as submitted by [the Clinic's counsel] failed to set forth any specific deficiencies to be cured. No finding that any specific elements of [Alonzo]'s expert report are deficient has been made by this Court.
>
> As per CPRC § 74.351(*l*), the Court can only find specific elements are deficient if the Court first finds that it appears to the Court that, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report. No such finding has been entered by this Court.
>
> WHEREFORE, PREMISES CONSIDERED, Plaintiff requests the Court to strike the Order as submitted by [the Clinic's counsel] and to enter an order in the future regarding correcting deficiencies in the expert report after such time as there is a proper hearing and the Court makes a specific finding of what, if any, specific deficiencies must be cured.

It is undisputed that Alonzo did not serve an amended report in the thirty-day extension period.

3

On December 17, 2009, the Clinic filed its second motion to dismiss Alonzo's claims for failure to serve an expert report that complied with the requirements of section 74.351. On March 10, 2010, the trial court held a hearing on the Clinic's second motion to dismiss. At the hearing, counsel for Alonzo suggested to the trial court that, at its October 28, 2009 hearing, the court had actually found that Alonzo's expert report was not deficient and, as such, inadvertently signed the November 5, 2010 order granting the thirty-day extension. The trial court then orally adopted counsel's suggestion and set aside its November 5 order.[3] On April 15, 2010, the trial court issued a written order in which it (1) granted Alonzo's motion to correct entry of the November 5 order, (2) withdrew its November 5 order granting Alonzo a thirty-day extension to amend her expert report, and (3) denied the Clinic's August 28, 2009 motion to dismiss. This interlocutory appeal followed. *See* TEX. R. APP. P. 28.1; TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (Vernon 2008) (authorizing an interlocutory appeal of the denial of a motion to dismiss filed under section 74.351(b)).

## II. STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss under section 74.351 of the civil practice and remedies code for abuse of discretion. *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003).

---

[3] The trial court also indicated that it was not considering the Clinic's December 17, 2009 motion to dismiss because it was striking its November 5 order that initially denied the Clinic's August 28, 2009 motion to dismiss.

4

### III. DISCUSSION

By three issues, the Clinic challenges the trial court's denial of its motion to dismiss Alonzo's health care liability claims.

### A. Availability of Thirty-Day Extension

Because the availability of the thirty-day extension for amending Alonzo's expert report will affect our disposition, we first address the Clinic's second issue. By that issue, the Clinic argues that, despite the trial court's purported withdrawal of its November 5, 2009 order, a thirty-day extension is unavailable to Alonzo because Alonzo relied on the extension to serve Dr. Thompson's CV on the Clinic outside the 120-day deadline. We agree.

At the March 10, 2010 hearing on the Clinic's second motion to dismiss, counsel for Alonzo attempted to persuade the trial court that, at the October 28, 2009 hearing, the court had, in fact, concluded that Alonzo's expert report was sufficient. Counsel further took the position that the trial court was required to make findings of specific deficiencies in the report before it could grant a thirty-day extension. For these reasons, counsel argued that the trial court's November 5, 2009 order allowing Alonzo a thirty-day extension was mistakenly issued. The trial court appeared to adopt all of counsel's suggestions. We are troubled by counsel's assertions at the March 10 hearing for several reasons.

First, the trial court's November 5 order granting Alonzo a thirty-day extension "to cure the report's *deficiency*," plainly acknowledged the deficiency in Alonzo's expert report. (Emphasis added.) Second, after reviewing the record from the October 28

5

hearing, it is clear to this Court that the trial court did not broadly conclude that Alonzo's expert report was sufficient. The only aspect of the report discussed in detail at the October 28 hearing was the absence of Dr. Thompson's CV. The Clinic asserted that it did not receive the CV within the 120-day deadline. And although Alonzo refuses to concede on appeal that her timely expert report did not contain Dr. Thompson's CV, statements made by Alonzo's counsel at the October 28 hearing indicated an acknowledgement that the CV was not included in the timely-served expert report—in particular, Alonzo's counsel asked the court for "the additional 30 days as to the curriculum vitae." Finally, neither the rules nor chapter 74 of the civil practice and remedies code require the trial court to clearly specify deficiencies in the current report or find that specific elements are deficient before granting a plaintiff the thirty-day extension available under section 74.351(c), a rule of law that was advanced by Alonzo both in her motion to correct entry of the trial court's November 5 order and in her argument to the trial court at the March 10 hearing.

Under section 74.351, a health care liability plaintiff is allowed one thirty-day extension to cure deficiencies in her otherwise timely-served expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Alonzo requested her extension at the October 28, 2009 hearing, the trial court granted it in its November 5, 2009 order, and Alonzo took full advantage of it to produce Dr. Thompson's CV outside the 120-day deadline for serving her expert report. Without the extension, Alonzo's expert report would have been patently deficient because it lacked Dr. Thompson's CV. *See id.* § 74.351(a). Further, in its objections and motion to dismiss, the Clinic specified the other

6

alleged deficiencies in the report, namely that the expert report failed to set out the required standard of care, breach, and causation elements and that Dr. Thompson's qualifications to author an expert report as to the Clinic were not established. Thus, Alonzo was on notice of the potential deficiencies in her report and acted at her own risk in failing to remedy those alleged deficiencies by serving an amended report within the thirty-day extension period granted by the trial court. For these reasons, we conclude that the trial court was without authority to withdraw its November 5, 2009 order because Alonzo already availed herself of the one-time thirty-day extension available to her under section 74.351. She is not entitled to another. *See id.* § 74.351(c). The Clinic's second issue is sustained.[4]

## B. Deficiency of the Expert Report

By its first issue, the Clinic argues that Alonzo's expert report is deficient because it does not set forth the applicable standard of care and breach or explain the causal connection between the Clinic's breach and Alonzo's injuries. Under section 74.351 of the Texas Civil Practice and Remedies Code, a claimant must "serve on each party or the party's attorney" an expert report and curriculum vitae "not later than the 120th day after the date the original petition was filed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). An expert report is "a written report by an expert that provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure

---

[4] As such, the trial court's November 5, 2009 order, which denied the Clinic's first motion to dismiss, stands; it was the Clinic's second motion to dismiss, which made the same arguments as its first motion, that was properly before the trial court at the March 10, 2010 hearing; and the denial of that second motion to dismiss is what we now address.

7

and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6).

In our review of the expert report, we are limited to the four corners of the report in determining whether the report manifests a good faith effort to comply with the statutory definition of an expert report. *Palacios*, 46 S.W.3d at 878; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*) (requiring that the trial court "grant a motion challenging the adequacy of the expert report only if appears to the court, after hearing, that the report does not represent an objective good faith effort to comply" with the statutory definition). The report "need not marshal all the plaintiff's proof." *Palacios*, 46 S.W.3d at 878; *Jernigan*, 195 S.W.3d at 93. If the expert report puts the defendant on notice of the specific conduct complained of and provides the trial court a basis on which to conclude the claims have merit, the report represents a good faith effort to comply with the statute. *Palacios*, 46 S.W.3d at 879.

Here, Alonzo's expert report meaningfully addresses only the actions and decisions of Drs. Otero, Molina, and Rodriguez-Ayala. The only specific reference in Dr. Thompson's report to the Clinic was that it "failed to meet the standard of care by refusing to see Ms. Alonzo on 4/18/07." But the report is wholly devoid of any standard of care applicable to the Clinic. Neither does the report include any analysis of the causal relationship between the breach alleged—apparently, the refusal of the Clinic to give Alonzo an appointment on April 18, 2007—and the injuries suffered by Alonzo. The report is therefore deficient as to the direct liability of the Clinic for Alonzo's injuries as it fails to set forth the standard of care or causation elements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

However, Alonzo argues that because she also sued the Clinic under the theory of respondeat superior for the actions of Drs. Otero, Molina, and Rodriguez-Ayala, whom Alonzo alleged were employees of the Clinic, her expert report that purportedly sufficiently sets forth the standard of care, breach, and causation elements as to the doctors is also sufficient as to the Clinic. Alonzo first raised her vicarious liability claim in her amended petition, filed September 4, 2009. In her amended petition, Alonzo alleged that Drs. Otero, Molina, and Rodriguez-Ayala were employees of the Clinic. Alonzo alleged that the Clinic "provided medical service by its . . . employees" to Alonzo and that all such . . . employees were acting within the course and scope of their employment" with the Clinic. Alonzo then alleged that the Clinic "is liable . . . for the negligence of its employees under the doctrine of Respondeat Superior." In the record before us on appeal, we find neither an amendment by the Clinic to its August 28 objections and motion to dismiss or any additional objections or motion to dismiss addressing the vicarious liability theory advanced in Alonzo's amended petition.

Dr. Thompson's report specifically addresses the conduct of Drs. Otero, Molina, and Rodriguez-Ayala, whom Alonzo alleged in her amended petition to be employees of the Clinic and for whose actions Alonzo alleged the Clinic to be liable under the theory of respondeat superior. A health care liability plaintiff fulfills her expert report requirement as to a defendant hospital, clinic, or other facility alleged to be vicariously liable if the report is adequate as to the employees alleged to be directly liable. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam) (holding that, if a defendant surgical facility's liability is vicarious, the expert report requirement is fulfilled as

9

to the surgical facility if the report is adequate as to the employees alleged to be directly liable); *RGV Healthcare Assocs., Inc. v. Estevis*, 294 S.W.3d 264, 273 (Tex. App.–Corpus Christi 2009, pet. denied) ("When a plaintiff's claim against a hospital is not for direct negligence, but is based on the conduct of an employee through the doctrine of respondeat superior," the report "is sufficient as against the hospital to satisfy the expert report requirement for the vicarious liability claims" if "the report identifies conduct by the hospital's employee, the hospital is implicated, and . . . the report adequately addresses the standard of care applicable to the employee, how the employee breached the standard of care, and that the breach caused the plaintiff's injury."); *Univ. of Tex. Med. Branch v. Railsback*, 259 S.W.3d 860, 869 (Tex. App.–Houston [1st Dist.] 2008, no pet.) (same); *Univ. of Tex. Sw. Med. Ctr. v. Dale*, 188 S.W.3d 877, 879 (Tex. App.–Dallas 2006, no pet.) (holding that "because appellants were not alleging UT Southwestern was directly negligent, the expert report was not required to mention UT Southwestern by name"). But we need not determine if Alonzo's report is actually sufficient under section 74.351 because the Clinic does assert on appeal that Dr. Thompson's report was deficient in explaining how the actions and decisions of its alleged employees were negligent; the Clinic therefore failed to present reversible error regarding the expert report as it relates to Alonzo's vicarious liability claim. *See Dale*, 188 S.W.3d at 879 (holding that "because [the defendant hospital] does not assert the expert report was defective in explaining how the conduct of each of its [employee] residents constituted negligence, we conclude [the hospital] does not present reversible error"); *see also* TEX. R. APP. P. 38.1(i). Alonzo fulfilled the expert report requirement as to her vicarious liability claim

10

against the Clinic by serving a report addressing the conduct of the Clinic employees alleged to be directly liable for Alonzo's injuries. *See Estevis*, 294 S.W.3d at 273 (holding that an expert report in the vicarious liability context need not even mention the defendant hospital or that the employees were acting in the course and scope of their employment because the author of the report would not be qualified to draw such a legal conclusion); *Dale*, 188 S.W.3d at 879 & n.1 (same).

In sum, because her expert report is deficient as to the direct liability of the Clinic, we conclude that the trial court abused its discretion in denying the Clinic's motion to dismiss with regard to that claim. No thirty-day extension is available because Alonzo already availed herself of that extension through the trial court's November 5, 2009 order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). We sustain the Clinic's first issue in so far as it relates to the direct liability claim. However, because the Clinic failed to assert and argue on appeal that the expert report was deficient as to the actions and decisions of the defendant doctors, the Clinic has presented no reversible error as to the vicarious liability claims asserted by Alonzo in her amended petition, and the trial court did not abuse its discretion in denying the Clinic's motion to dismiss in this regard. We overrule the Clinic's first issue in so far as it relates to the vicarious liability claim.

## C.  Attorneys' Fees

By its third issue, the Clinic argues that the trial court erred in failing to award it attorneys' fees and costs. However, because Alonzo did timely serve an expert report in regard to a portion of her claims, we need not address the Clinic's request for attorneys' fees at this stage. *See* TEX CIV. PRAC. & REM. CODE ANN. § 74.351(b) (stating that, if

11

"expert report has not been served within the period specified by [s]ubsection (a), the court, on the motion of ... health care provider, shall . . . award[ ] . . . reasonable attorney's fees"); *see also Railsback*, 259 S.W.3d at 870 n.14 (declining to reach attorneys' fees issue in case where plaintiff timely served a report on part of her vicarious liability claims). The Clinic's third issue is overruled.

## IV. CONCLUSION

We affirm the order of the trial court denying the Clinic's motion to dismiss in so far as it relates to Alonzo's vicarious liability claim against the Clinic. We reverse the order of the trial court denying the Clinic's motion to dismiss in so far as it relates to Alonzo's direct liability claim against the Clinic and render judgment dismissing that claim with prejudice. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b).

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
24th day of March, 2011.